## LOVING COUNTY v. REEVES COUNTY.
### No. 3763.

Court of Civil Appeals of Texas. El Paso. Jan. 19, 1939.

Rehearing Denied Feb. 9, 1939.

L. A. Dale, of Pecos, and A. W. Carothers, of Mentone, for appellant.

Roy I. Biggs and Richard L. Toll, County Attorney, both of Pecos, for appellee.

WALTHALL, Justice.

Loving County and Reeves County will be referred to, respectively, as plaintiff and defendant, as in the trial court. Loving County, as plaintiff, filed this suit against Reeves County, as defendant, in the District Court of Reeves County on the 27th day of July, 1937, to recover judgment in the total amount of $11,177.95, alleged to be due it (1) by reason of repeated transfers of certain funds alleged to belong to Loving County to the funds of Reeves County, amounting to the total net sum of $10,029.42, and (2) on net proceeds of certain State Warrants not credited to Loving County, in the sum of $1,148.53, all during the time Loving County was attached to Reeves County for judicial and other purposes, and while the affairs of Loving County were being administered by the Commissioners' Court of Reeves County. Detailed statements of such transfers are contained in plaintiff's petition. Plaintiff's petition sets out in haec verba its claim as above stated and alleges that the claim substantially as set out was presented to the Commissioners' Court of Reeves County on or about the second Monday of December, 1936, for rejection or allowance, and that said court entered no judgment or order, either allowing or disallowing the claim, and that after the elapse of about eight months, during which time plaintiff awaited the court's action, said claim stood in law disallowed because of such failure to take any action thereon. The claim so presented and set out is pleaded in plaintiff's petition substantially (1) as plaintiff's cause of action; (2) as a basis of suit because of its disallowance by said court; and (3) for all proper purposes.

It is specially alleged that at all times mentioned in the petition from prior to the year 1913 to on or about July 15, 1931, Loving County was attached to Reeves County for judicial and other statutory purposes; that during all of said times Loving County was an existing political entity as a County of the State of Texas, and an unorganized and/or disorganized county, and that during said time its affairs were administered by Reeves County through the Commissioners' Court of said county.

Reeves County answered and presented to the court its general demurrer to plaintiff's petition, which demurrer the court, Hon. Charles L. Klapproth, Judge of the

70th Judicial District, sitting in exchange of districts with Honorable J. A. Drane, of the 109th Judicial District, heard, and on the hearing sustained, defendant's general demurrer to plaintiff's petition, and on plaintiff's declining to amend, the suit was dismissed, to which action and judgment of the court Loving County duly excepted and in open court gave notice, and in due time perfected its appeal to this Court.

## Opinion

Plaintiff's petition is necessarily quite lengthy, and because of its length we omit copying it in the opinion. Defendant, Reeves County, accepts the above statement of the nature and result of the suit, which we have taken from plaintiff's brief as being substantially correct.

Plaintiff alleged, in substance, that about the 15th day of July, 1931, Loving County was organized, elected its own officers, and took over the management of its own (county) affairs, since which time it has been and is now a duly organized county; that at all times while Loving County was attached to Reeves County, the revenues and moneys belonging to Loving County were received by, held and administered by the Commissioners' Court of Reeves County, and that by reason of such relation the Commissioners' Court of Reeves County became and was the trustee of said Loving County properties; that the Commissioners' Court of Reeves County began on and about the month of October, 1914, to co-mingle the moneys belonging to Loving County with the moneys belonging to Reeves County, which was begun and carried on by the system or device of transferring, by its orders entered of record, Loving County funds to Reeves County funds; that said practice (of transferring) continued from time to time until shortly before Loving County was organized and took over its own affairs, all as set out in detail in its claim against Reeves County set out herein, which claim substantially as written herein was officially by Loving County's Commissioners' Court presented to and filed with the County Clerk of Reeves County on or about the 23rd day of November, 1936, and which claim was presented in open session of Reeves County Commissioners' Court on or about the second Monday in December, 1936. Then follows the want of action by the Commissioners' Court of Reeves County, as in the above statement.

The petition then states: "The claim is as follows:" Then follow the statements that at a meeting of the Commissioners' Court of Loving County the claim of Loving County against Reeves County was considered and approved for presentation to the Commissioners' Court of Reeves County, and that same be presented; that the claim as considered and presented is for the total sum of $11,177.95; that Loving County was attached to Reeves County for judicial and other purposes through all the years from prior to 1913 to on or about July 15, 1931; that the acts of Reeves County in the transferring of the funds of Loving County to the funds of Reeves County did not begin until 1914, and then on a system of borrowing and paying back, and thereafter the practice of transferring the funds grew and continued until shortly prior to the reorganization of Loving County. The claim as presented is in two counts, the first involves the transfer of moneys, as stated, and the second, it is alleged, grew out of what appears to be a failure to give Loving County credit for the proceeds of one State warrant and part of the proceeds of another State warrant, both explained in the second count in the petition. It is alleged that the acts complained of were done by officers of Reeves County acting in their governmental capacity.

The alleged transfers of moneys made from Loving County to Reeves County are set out in the petition by exhibits, stating the dates, the Loving County funds to the Reeves County funds, and the amount transferred.

The petition states by exhibits the various orders from the Minutes of the Commissioners' Court of Reeves County affecting the matters set up in the claim sued upon and the matters as to the State warrants above referred to, and the quarterly reports of the Treasurer of Reeves County, purporting to show the dates of the various transfers of Loving County funds to Reeves County, as ordered by the Commissioners' Court, beginning with February 9, 1914, and ending with May 11, 1931.

In presenting the above claim to the Commissioners' Court of Reeves County, the petition alleges that plaintiff prayed that said Court audit the claim and allow same in the total amount, and/or as to each item thereof considered separately.

The petition alleges that Reeves County received said moneys belonging as afore-

said to Loving County, used same, and had the benefit of same and of each portion thereof, and that by reason of which Reeves County is legally and equitably indebted to Loving County in the amount of the claim sued for and each item thereof.

The petition alleges that defendant having presented to plaintiff no defense to its cause of action, but has continued to hold and use plaintiff's moneys, plaintiff is entitled to recover on the amounts sued for.

Plaintiff prays that it have judgment for its debt with interest thereon from December 14, 1936, and for relief general and special.

The trial court having sustained defendant's general demurrer to plaintiff's petition, the only question before us is the sufficiency of the petition as against defendant's general demurrer.

Plaintiff asserts error to the action of the trial court in sustaining the general demurrer.

Loving County was formerly an organized county in the State; the county was disorganized by an Act of the Legislature in 1897, Chapter 143, page 205. The Act is discussed and construed by the Fort Worth Court of Civil Appeals in Clarke & Courts v. Reeves County, 25 Tex.Civ. 463, 61 S.W. 981, where the Act is held to be a general law of the State.

We think we need not discuss separately each of plaintiff's propositions.

Plaintiff refers to the above Act of the Legislature as sustaining some of its propositions. The Act provides for the disorganization of Loving County; it attaches Loving County to Reeves County "for judicial and other purposes"; it provides for the assessment and collection of taxes in said county and for the payment of the outstanding indebtedness of Loving County. By a preamble the Act recites that Loving County as it then exists is in a disorganized condition, having no county officials resident in the county; that no taxes have been assessed and collected in the county for the years 1895 and 1896, and that only a portion of the taxes assessed for the years 1893 and 1894 remain uncollected. The Act then by its sections disorganizes the county and attaches it to Reeves County for judicial and other purposes until such time as Loving County shall resume an organized state. The Act then by successive sections provides that the County Commissioners' Court of

Reeves County shall levy and collect an annual tax upon property in Loving County to liquidate the county's indebtedness then existing; the manner of such assessment and collection shall be such as is provided in unorganized counties of the State; the Act also provides for the collection of taxes due the State and such as may be levied for county purposes as provided. The Act provides for the giving of bonds by the assessor and collector of taxes reciting therein that the bonds are given for the use of Loving County, and are held to the discharge of their duties and are entitled to receive commissions as if acting for Loving County alone; that the officers shall make separate reports and settlements with the State and with the Commissioners' Court on account of Loving County to the effect as required of them as officers of Reeves County; the Reeves County Treasurer was not to be the custodian of the moneys collected to pay the interest and provide a sinking fund upon the bonded indebtedness of Loving County, nor required to give bond after all other Loving County known debts had been paid, and any funds remaining in his hands after payment of all known debts of Loving County he shall pay to the State Treasurer to be used in liquidation of the Loving County bonded indebtedness; after all debts have been paid other than the bonded indebtedness, the bonds of the assessor and collector shall be fixed by the Reeves County Commissioners' Court.

From the above and other provisions of the Act of 1897 not reviewed we have concluded that the Legislature intended by the Act to provide only for the disorganization of Loving County and to attach the county to Reeves County for governmental purposes until Loving County should reorganize, and to provide for the assessment and collection of taxes for the payment of the outstanding indebtedness of Loving County. We have concluded that the Legislature did not contemplate or intend that Loving County could have any claim upon Reeves County or cause of action for any taxes collected from the territory embraced in Loving County while that county was attached to Reeves for governmental purposes. The Legislature made no provision for a continuance of the original bonds of Reeves County officers after the payment of the indebtedness of Loving County, but the bonds were fixed at $5,000 instead of upon a sliding scale ac-

cording to the funds that might come into their hands.

■ After the disorganization of Loving County, in our opinion, it was like any other unorganized county. It could not be contemplated that property in Loving County should not be taxed for judicial and other governmental purposes while unorganized. Articles 7228 to 7241, both inclusive, of the Revised Civil Statutes 1925; Article 8 of the Texas Constitution, Vernon's Ann.St., Secs. 1 and 18.

■ The reference in Article 7238 to Article 7235 is apparently an error in revision or codification, as suggested by defendant, and the reference, we think, should be to Article 7228, to give the intended meaning.

The schedule of transfers set out in plaintiff's petition sufficiently shows, we think, that the funds sought to be recovered from defendant were bridge, jury, general, and road and bridge funds, accumulated by taxation levied, assessed and collected during the time Loving County was attached to Reeves County for judicial and other purposes, and that none of the funds sought to be recovered were funds owned by Loving County prior to its disorganization, or funds accumulated for the liquidation of any of Loving County's indebtedness.

We have not found in the above legislative enactment of 1897, nor in the amendment thereto, any statement as to any property that was to be delivered by Reeves County to Loving County in the event of its reorganization.

■ There is no provision in Articles 7239, 7240, 7242 and 1570, R.C.S., and reading the enactments together, each in reference to the other, as though they were parts of one statute, 39 Tex.Jur. pp. 252, 256, paragraphs 134–135, which enumerates and sets out what shall be delivered to an unorganized or disorganized county when reorganized, and which we think includes any funds collected by Reeves County through taxation of any Loving County property while attached to that county.

■ . The amendment to Section 5 of the Act disorganizing Loving County and providing for the payment of its bonded and other indebtedness, Laws 1905, c. 82, provides that after all indebtedness, other than bonded indebtedness, shall have been paid, all taxes collected by the Comptroller on Loving County lands, other than the special tax levied to pay the bonded indebtedness, shall be paid over to the State Treasurer for liquidation of the bonded indebtedness, and thereafter shall be disposed of as provided by Articles 5152 and 5152a (now 7239 and 7240), that is, "shall be paid into the county treasury of the organized county to which such county is attached for judicial purposes." The Act gives no direction for its distribution. Plaintiff suggests that the fund paid over to the organized county is held as a trust fund for Loving County on its reorganization. We think, however, the better interpretation is, that the fund when turned over to Reeves County was for judicial and other purposes, administrative purposes.

We have concluded that the trial court was not in error in sustaining the general demurrer to plaintiff's petition, and the case is affirmed.

### On Motion for Rehearing.

Loving County in its motion for rehearing complains of the judgment of this Court in affirming the judgment of the District Court in sustaining appellee's general demurrer to its petition, and that the judgment holds, in effect, that under no circumstances could Loving County recover from Reeves County "for the misapplication of its funds and property, and that Reeves County could rightfully profit to the amount of over $10,000.00 in its management of the affairs of Loving County, all of which is contrary to the sound principles of law and equity."

The above statement would have some force if the retention in the hands of Reeves County of the funds sued for was clearly a "misapplication" of the funds, and if the funds and property unmistakably belong to Loving County.

It is made to appear from the petition that Loving County had been an organized county, and had become disorganized, and that during the state of its disorganization it was attached to Reeves County for judicial and other purposes and its affairs had been placed with and were administered by Reeves County.

The Act of the Legislature referred to in the opinion disorganizing Loving County shows all the facts necessary to be considered in passing upon the sufficiency of

appellant's petition as against a general demurrer. Loving County's cause of action is necessarily determined by a proper construction of that Act.

The Act shows the purpose and the necessity of its disorganization, the necessity for the assessment and collection of taxes, "for the payment of the outstanding indebtedness of said County"; shows the years for which no taxes had been assessed and the years for which none were collected; makes it the duty of Reeves County Commissioners to levy a sufficient annual tax "to liquidate the indebtedness now existing against said county."

The Act provides for the giving of bonds by the Reeves County Assessor and Collector of Taxes and the Treasurer conditioned as required, reciting that they are given for the use of Loving County.

The Act clearly states the duty of the Reeves County officers in making the assessment and collection of the taxes, the purpose and necessity for doing so, and states the disposition to be made of the taxes when collected. The moneys collected by Reeves County and for which Loving County sues, as shown by its petition, are the moneys collected under and by virtue of the Act pleaded; the moneys collected by Reeves County, and for which Loving County sues, could be no other than the moneys collected under the Act of the Legislature pleaded by appellant, and appellant does not allege that the moneys were other than moneys collected under the legislative act, nor does appellant allege that the debts of Loving County remain unpaid. We think it necessarily follows that Reeves County used and disposed of the moneys collected as the legislative act directs. The petition does not allege that the moneys collected by Reeves County, and for which appellant sues, are moneys collected in excess of the debts owed by Loving County.

We are still of the opinion that the petition does not show that the moneys sued for belong to Loving County.

The motion for a rehearing is overruled.