**James D. LANCASTER, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–86–028–CR.**

Court of Appeals of Texas,
Fort Worth.

July 2, 1987.

David Wacker, Fort Worth, for appellant.

Tim Curry, Crim. Dist. Atty., and Delonia A. Watson, Asst. Dist. Atty., Fort Worth, for State.

Before JOE SPURLOCK, II, FARRIS and KELTNER, JJ.

## OPINION

JOE SPURLOCK, II, Justice

Appellant, James D. Lancaster, appeals his conviction by a jury for possession of methamphetamine under 28 grams. *See* TEX.REV.CIV.STAT.ANN. art. 4476–15, sec. 4.04(b) (Vernon Supp.1987). Enhanced by two prior convictions the jury assessed punishment at 99 years confinement in the Texas Department of Corrections.

We affirm.

Lancaster was arrested in July 1983, when approximately a dozen officers of the Euless Police Department executed a search warrant at the Euless home of his estranged wife, Carol Lancaster. Probable cause for the warrant was based on an informant's tip that Lancaster and his estranged wife were dealing amphetamine and methamphetamine from the house. According to the testimony of Detective Steve Earnest, when the police arrived at the house, around 9:25 p.m., two people were standing either on the front porch or just beyond the front steps of the house talking to someone inside the house. Earnest said the people did not appear to see the police, who were hiding. Earnest said the two people stood in this same position for a while, talking to the person inside the house, and then walked towards a car parked on the street. Earnest said he de-

cided to go ahead with the raid, and yelled "police." The two individuals stopped, and one, David Whitfield, raised his hands. Earnest and Department of Public Safety Narcotics Officer Johnny Prince both believed Whitfield was reaching for a pistol on his belt when he lowered his right hand, and both officers fired shots at him. Whitfield fell to the ground, but was not hit. The two individuals were arrested and Whitfield's gun was taken.

Prince testified he saw Lancaster standing in the doorway after the shots were fired and just prior to the police entering the house. He stated Lancaster apparently fled into the house. Officer Danny Neill also testified he saw Lancaster, who was standing at the front door, slam the door shut after the shots were fired. At this point Neill and some other officers followed Lancaster into the house, but did not see him. Lancaster was later found outside crouched down along a side-wall of the house, near the bathroom window. He was arrested.

A thorough search of the house revealed drugs and drug paraphernalia, including a white cosmetic jar lying in a bowl of ice cubes in plain view in the freezer compartment of the kitchen refrigerator. The jar contained methamphetamine. Lancaster was indicted for possession of the methamphetamine in the freezer.

In points of error one and two, Lancaster alleges the evidence is insufficient to support the conviction. He asserts the State failed to prove he had actual care, custody, control, or management of the methamphetamine, and that he knew the item he possessed was contraband. As in many drug possession cases, the evidence presented by the State to support the conviction was circumstantial evidence.

In reviewing the sufficiency of the evidence in either a direct or circumstantial evidence case, we must view the evidence in the light most favorable to the prosecution and consider whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. State,* 672 S.W.2d 801, 803 (Tex.Crim.App.1984); *Houston v.*

*State,* 663 S.W.2d 455, 456 (Tex.Crim.App. 1984); *Wilson v. State,* 654 S.W.2d 465, 471 (Tex.Crim.App.1983) (opinion on reh'g). A conviction cannot be sustained if the evidence leaves any reasonable doubt as to the guilt of the accused. *Jackson v. Virginia,* 443 U.S. 307, 317–18, 99 S.Ct. 2781, 2788, 61 L.Ed.2d 560, 572–73 (1979). Thus, it follows that a conviction based on circumstantial evidence cannot be sustained if the circumstances do not exclude every other reasonable hypothesis except that of the guilt of the defendant. *Johnson v. State,* 673 S.W.2d 190, 195 (Tex.Crim.App.1984); *Jackson,* 672 S.W.2d at 803.

■ In order to prove unlawful possession of a controlled substance, the State must prove the accused exercised care, control, and management over the contraband, and that the accused knew the substance he possessed was contraband. *Cude v. State,* 716 S.W.2d 46, 47 (Tex.Crim.App. 1986) (en banc); *Johnson v. State,* 658 S.W.2d 623, 627 (Tex.Crim.App.1983) (en banc). Control need not be exclusive, but may be jointly exercised with one or more persons. *Id.* When the accused is not in exclusive possession of the place where the contraband is found, it cannot be concluded that the accused had knowledge or control over the substance unless there are independent additional facts and circumstances which affirmatively link the accused to the contraband. *Id.*

Some of the factors which have been enumerated as facts and circumstances that establish an affirmative link to show possession include: 1) the contraband was in open or in plain view; 2) the place where the contraband was found was in close proximity to the accused and readily accessible to him; 3) the amount of contraband was large enough to indicate that the accused knew of its presence; and 4) the accused was closely related to other persons in joint possession of the contraband and the conduct of the accused with respect to the contraband was such as to indicate his knowledge and control. *Valcarcel v. State,* 718 S.W.2d 368, 372 (Tex.App.— Amarillo 1986, no pet.); *Earvin v. State,* 632 S.W.2d 920, 924 (Tex.App.—Dallas

**164**

1982, pet. ref'd); *see also Deshong v. State*, 625 S.W.2d 327, 329 (Tex.Crim.App.1981).

■ The independent facts relied on by the State to support possession were provided by the testimony of the officers conducting the raid. They testified Lancaster was standing at the front door talking to two persons standing in the front lawn when they arrived to execute the warrant, and that he fled to the inside of the house after the police fired shots at one of the individuals as he reached for his gun. Apparently Lancaster escaped through a bathroom window. He was arrested crouched down on the outside of the house near the bathroom window. At the time the raid was executed, only Carol Lancaster and James Lancaster were in the house, although several persons arrived at the house while the raid was going on. The officers also testified that Lancaster's estranged wife, Carol Lancaster, blocked their way as they pursued Lancaster into the house. A search of the house revealed several drug-related items, including syringes, and some mens clothing, which the officers said could have belonged to Lancaster. The raid was based on a search warrant supported by an informant's tip. Officer Earnest two weeks previously had confirmed a tip by the informant that Lancaster was at the residence. We hold this independent evidence is sufficient enough to affirmatively link Lancaster to the house and the drugs inside to prove the elements of the unlawful possession charge. The evidence viewed in the light most favorable to the State establishes more than a suspicion of Lancaster's guilt. The jury could rationally conclude that all reasonable hypotheses other than Lancaster's guilt were excluded. *See Earvin*, 632 S.W.2d at 923. Points of error one and two are overruled.

■ In point of error three, Lancaster challenges the constitutionality of TEX. CODE CRIM.PROC.ANN. art. 37.07, sec. 4(a) (Vernon Supp.1987). This court has previously determined that the statute, which allows the judge to inform the jury of the existence of parole law, but forbids the jury from applying it in assessing punishment is constitutional. *See Shaw v.*

*State*, 729 S.W.2d 134 (Tex.App.—Fort Worth, 1987, pet. pending) (not yet reported); and *Patton v. State*, 717 S.W.2d 772, 779 (Tex.App.—Fort Worth 1986, pet. granted). In accordance with these decisions, we overrule point of error three.

■ In point of error four, Lancaster asserts the trial court erred in submitting the above mentioned parole law instructions because the enabling statute does not exist. Article 37.07, section 4(a) provides the parole instruction is to be given only when the defendant is guilty of an offense listed in TEX.CODE CRIM.PROC.ANN. art. 42.12, sec. 3f(a)(1) (Vernon Supp.1987), or when the judgment contains an affirmative finding under section 3f(a)(2) of the code. There is no section 3f(a)(1) or 3f(a)(2) in article 42.12. An examination of articles 42.12 and 37.07 makes it clear that the reference intended by the legislature in article 37.07, section 4(a) was to article 42.12, section 3g(a)(1) and 3g(a)(2). This same argument was rejected by this court in *Shaw*, where this court held a clearly clerical error in a statute may be disregarded. *See Shaw*, 729 S.W.2d at 136; *Loving County v. Reeves County*, 126 S.W.2d 87, 91 (Tex.Civ.App.—El Paso 1939, writ ref'd). Point of error four is overruled.

■ In points of error five through nine Lancaster contends the final conviction alleged in enhancement paragraph two of the indictment was not properly proved by the State because the fingerprints in the penitentiary packet did not relate to the final conviction in the cause number cited in the enhancement paragraph. Originally the pen packet contained judgments and convictions for two offenses, but only one set of fingerprints. The fingerprints were taken in conjunction with a 1966 conviction that was not final at the time of this trial. However, at the time of this trial a second (1967) conviction was final. The gist of Lancaster's complaint is that the fingerprints taken in conjunction with the 1966 conviction cannot be linked to the final (1967) conviction to support enhancement paragraph two. We disagree.

The Court of Criminal Appeals of Texas has recognized three preferred ways the

State may prove identity for purposes of enhancement. *Littles v. State*, No. 301–83 (Tex.Crim.App., Mar. 11, 1987) (en banc) (opinion on reh'g) (not yet reported). One of these is by introducing certified copies of the judgment and sentence and record of the Texas Department of Corrections (T.D.C.) or county jail, including fingerprints of the accused supported by expert testimony identifying the fingerprints with prints of the accused. *See id.; Daniel v. State*, 585 S.W.2d 688, 690–91 (Tex.Crim.App.1979).

Prior to introducing the pen packet into evidence in this case, the court excised all references to the 1966 conviction, including any such identification on the fingerprint card. After the pen packet was admitted into evidence the State verified Lancaster was the same individual as convicted in the remaining 1967 case through the expert testimony of a fingerprint specialist with the Sheriff's department who testified Lancaster was the person whose fingerprints were on the T.D.C. fingerprint card. The fingerprint card was part of the exemplified, certified pen packet, which carried the T.D.C. number for appellant as well as his photo. Although the fingerprint card did not list any cause numbers under which appellant was serving time, it clearly referred to him as the person in the Texas Department of Corrections under his inmate number. The remainder of the pen packet referred to the cause number, and connected his T.D.C. inmate number on the fingerprint card with that case number, by affidavit of the custodian. The T.D.C. inmate number on the fingerprint card was likewise on the T.D.C. inmate photo clearly depicting Lancaster.

In a case similar to this, the Court of Criminal Appeals held that one set of fingerprints was sufficient to link the accused to each of five separate convictions documented in the pen packet. *Cole v. State*, 484 S.W.2d 779, 784 (Tex.Crim.App.1972). In so holding, the Court observed that the fingerprints refer to the packet as a whole and not to one specific conviction. *Id.; see also Sander v. State*, 695 S.W.2d 646, 648 (Tex.App.—Dallas 1985, no pet.); *cf. Fain v. State*, 688 S.W.2d 235, 237 (Tex.App.—El Paso 1985, no pet.) (cross-referenced to TDC inmate number sufficient to identify). We likewise find the pen packet containing the fingerprints of Lancaster and the expert testimony were sufficient to prove he was the person convicted in the prior conviction, and overrule points of error five through nine.

■ Points of error ten and eleven concern the final conviction alleged in enhancement paragraph one. Here Lancaster complains the evidence was insufficient to show the conviction in that paragraph was final because he was denied his right to appeal. At the time of the conviction, April 21, 1976, Lancaster executed a written waiver of appeal signed by himself and his trial attorney. Later, on May 3, 1976 Lancaster filed a pro se notice of suppression of waiver of appeal and notice of appeal. Nothing in the record shows that appellant obtained consent of the trial court to withdraw his waiver, nor that the notice was brought to the attention of the court.

Previously, on April 30, 1976 a notice of appeal was filed on behalf of Lancaster (without his consent) by an attorney, at the request of Lancaster's wife and signed by his wife. A motion for dismissal of the appeal was filed on May 12, 1976 by the attorney at the request of Lancaster's wife. It reflected that the request for dismissal was upon the grounds stated: "such an appeal would be frivolous and not in the best interest of ... James Dalton Lancaster." The attorney also filed, on July 12, 1976, a motion to withdraw as attorney of record, stating "CURTIS M. LOVELESS does not represent JAMES DALTON LANCASTER and does not wish to interfere with any rights of Defendant or take any action which would have any bearing on the case of the Defendant." On July 26, 1976 an order dismissing this purported appeal was signed. The order was based upon the May 12th motion. Lancaster contends that the motion to dismiss the appeal made by the attorney and the subsequent order of the court were without his consent, and that dismissal of the appeal was not his desire.

The State argues the point is moot because Lancaster's pro se notice of appeal was not filed within the ten day statutory time period required by TEX.CODE CRIM. PROC.ANN. art. 40.08 (Vernon 1979). However at oral argument, the State conceded that the notice of appeal was timely filed because the tenth day after sentencing was pronounced fell on a Saturday, and Lancaster filed his notice on the following Monday. The only remaining issue is whether an appeal was ever perfected. We hold it was not.

The applicable provisions of the Code of Criminal Procedure governing this appeal provided:

> (a) It shall be necessary for defendant, as a condition of perfecting an appeal to the Court of Criminal Appeals, to give notice of appeal. This notice may be given orally in open court or may be in writing filed with the clerk. Such notice shall be sufficient if it shows the desire of defendant to appeal from the conviction to the Court of Criminal Appeals.

TEX.CODE CRIM.PROC.ANN. art. 44.-08(a) (Vernon 1979) (this provision was repealed, but is now included in TEX.R. APP.P. 40(b), effective Sept. 1, 1986).

While the statute does not speak of what an appellant must do after the appellant first files a knowing waiver of his right to appeal and desires later to appeal, case law has established he must first seek the consent of the trial court before he may withdraw this waiver. *See Hurd v. State*, 548 S.W.2d 388 (Tex.Crim.App.1977), and the cases cited therein. In *Hurd*, both the majority *and* dissent recognize the rules that the trial judge must first permit the withdrawal of the waiver of the notice of appeal *and* consent to the appeal. *Id.* at 390–91 (majority) and 391 (dissent). In dissent in *Hurd*, not inconsistent with the majority opinion therein, Judge Odom noted: "[t]his Court has previously rejected the proposition that the filing of notice of appeal within the ten-day period automatically withdraws the waiver. The waiver may be withdrawn only with permission of the court." *Id.* at 391.

In reviewing the facts of the present case, we find nothing in the record showing that appellant sought consent from the court to withdraw his appeal those many years ago, nor that the court consented. All we find is a pro se attempt to withdraw the waiver and to appeal. This came after an attorney had entered notice of appeal on behalf of appellant, at the request of the wife, without the consent of appellant. No consent of the court was ever sought for this action either. Subsequently, the court allowed the attorney to withdraw this purported appeal and withdraw his unauthorized representation. Lancaster argues that the court's action in dismissing the attorney's unauthorized attempt to appeal, somehow shows that the court consented to Lancaster's action in attempting a pro se appeal. We hold it does not. We hold Lancaster never perfected his appeal. *See id.* The record shows he served his time in the penitentiary for this offense, and did not ever attack the conviction, or insist on his appeal, if any, until this collateral attack on the conviction in this trial. We find the conviction was final, no appeal having been perfected, and overrule points of error ten and eleven.

■ In point of error twelve Lancaster alleges the trial court erred in failing to order the State to disclose the identity of the informant whose information formed the basis for the search warrant. The identity of an informant will not be disclosed unless: 1) the informant participates in the offense; 2) the informant was present at the time of the offense or arrest; or 3) the informant was otherwise shown to be a material witness (a) to the transaction or (b) as to whether the accused knowingly committed the action charged. *See Rodriguez v. State*, 614 S.W.2d 448, 449 (Tex. Crim.App.1981); *Sessions v. State*, 498 S.W.2d 933, 935 (Tex.Crim.App.1973); *Cortez v. State*, 685 S.W.2d 467, 471 (Tex.App. —Fort Worth 1985, pet. ref'd).

■ To obtain the identity of an informant, the accused must make a showing that the informant falls within one of the above categories. *See Gaffney v. State*, 575 S.W.2d 537, 542 (Tex.Crim.App.1978).

This showing must be based on more than just conjecture or speculation. *Id.* Lancaster did not meet this burden at trial. In fact his attorney acknowledged Lancaster was not entitled to know the identity of the informant, and stated he did not wish to have the identity disclosed. Without more, there is no basis for this court to determine that the identity of the informant was crucial to Lancaster's defense. Point of error twelve is overruled.

■ In point of error thirteen, Lancaster contends the trial court erred in denying his request for continuance made during the trial so that he could secure a written transcript of motion to suppress testimony given by one of the detectives. The statute permitting a continuance or postponement of a criminal trial is TEX.CODE CRIM. PROC.ANN. art. 29.13 (Vernon 1966). That article provides:

> A continuance or postponement may be granted on the motion of the State or defendant after the trial has begun, when it is made to appear to the satisfaction of the court that by some unexpected occurrence since the trial began, which no reasonable diligence could have anticipated, the applicant is so taken by surprise that a fair trial cannot be had.

Whether a motion for a continuance is granted or denied during trial is solely discretionary with the court. *See Bradshaw v. State,* 482 S.W.2d 233, 235 (Tex.Crim. App.1972). Thus the standard of review is whether the trial court abused its discretion.

Lancaster's attorney requested a postponement so the court reporter could transcribe the witness' testimony. He said the transcription was necessary to impeach the witness, and Lancaster would be prejudiced without it. In denying the continuance, the court said the request was waived because it was not timely made. The request was not brought to the court's attention until the day after the suppression hearing. On cross-examination Lancaster's attorney admitted that the scope of the suppression hearing was on the warrant itself, and that information was already contained in that witness' affidavit. Finding the court did

not abuse its discretion in denying the motion for continuance, point of error thirteen is overruled.

In his final point of error, Lancaster claims the trial court erred in denying his motion to dismiss because of noncompliance with the Speedy Trial Act. *See* TEX. CODE CRIM.PROC.ANN. art. 32A.02 (Vernon Supp.1987). The Speedy Trial Act was promulgated to insure that an accused is not denied a speedy resolution of his case because of prosecutorial delay. Thus the State must announce ready within 120 days of the commencement of the criminal action. The announcement of ready is prima facie evidence that the State is ready to try the case. *See Phillips v. State,* 659 S.W.2d 415, 419 (Tex.Crim.App.1983); *Yarborough v. State,* 652 S.W.2d 831, 833 (Tex.App.— Fort Worth 1983, pet. ref'd). The accused may then offer evidence rebutting the announcement of ready. *Smith v. State,* 659 S.W.2d 828, 830 (Tex.Crim.App.1983).

■ There is no dispute that the announcement of ready was made within the 120 days. Lancaster's complaint is that the State failed to exercise any due diligence to secure his presence in the court for arraignment until the date of trial. We reject this contention. This court has already held it is not necessary for an accused to be present in the courtroom when the State announces ready, and that it is the practice of Tarrant County courts to arraign the accused at the commencement of his trial. *See Bigler v. State,* 718 S.W.2d 896, 898 (Tex.App.—Fort Worth 1986, pet. ref'd); *Bezotte v. State,* 709 S.W.2d 808, 809 (Tex. App.—Fort Worth 1986, pet. ref'd); *see also Jones v. State,* 727 S.W.2d 14, 16 (Tex.App.—Beaumont 1987, no pet.).

■ Lancaster also complains when the State first announced ready on August 24, 1983, it was not factually ready to try the case. At the hearing on the motion to dismiss, the chief prosecutor for Lancaster's case testified that prior to announcing ready for the first time he had spoken about the case to several of the police officers and detectives involved in executing the search warrant as well as several other people. He further testified that

most of the witnesses were either police officers or chemists working for the city, county, or State, and he anticipated no difficulty obtaining the witnesses for trial. Other testimony at the hearing revealed that after Lancaster was released on bail, he was arrested for another offense in Denton County and was incarcerated in the Denton County Jail for a period of time before being transported to Huntsville to serve a prison term. During the time he was in the Denton County Jail and in the Texas Department of Corrections, Tarrant County had issued detainers for him. In addition, attorneys for the State as well as prior defense counsel for Lancaster testified that it is common practice in Tarrant County for the accused to remain in jail during pretrial proceedings such as announcing ready for trial, unless an actual hearing is held. There is also testimony that it is the practice in Tarrant County to wait and hold off preliminary hearings on motions until the same week the case is set for trial. We find the evidence submitted by Lancaster in support of his motion to dismiss does not rebut the State's prima facie announcement of ready for trial. The State announced ready a total of seventeen times, beginning August 24, 1983, before the case finally went to trial. Under the circumstances of this case and the prior decisions of this court there were no violations of the Speedy Trial Act. *See Bigler*, 718 S.W.2d at 898; *Bezotte*, 709 S.W.2d at 809. Point of error fourteen is therefore overruled.

The judgment of the trial court is affirmed.