Affirmed and Memorandum Opinion
filed May 10, 2011.

 

In
The

Fourteenth
Court of Appeals



NO. 14-10-00594-CR



Junius Sereal, Appellant 

v.

The State of
Texas, Appellee 



On Appeal from
the 405th District Court

Galveston County, Texas

Trial Court
Cause No. 08CR2114



 

MEMORANDUM OPINION 

            A
jury found appellant Junius Sereal guilty of possession of four or more but
less than 200 grams of cocaine with intent to deliver and, after finding two
enhancement paragraphs true, assessed punishment of thirty-two years’
confinement in the Texas Department of Criminal Justice, Institutional
Division.  The trial court sentenced the appellant accordingly.  In a single
issue, the appellant contends the evidence is legally insufficient to support
his conviction because a rational trier of fact could not have found, beyond a
reasonable doubt, that he possessed the cocaine.  We affirm.




I

            In
June 2008, City of Dickinson Detective Michael E. Henson, Jr., received
information from a confidential informant that Ewa Sereal, the appellant’s
wife, possessed and was selling cocaine at 3010 Ohio Avenue in Dickinson.  In
preparing a search warrant for the premises, Henson determined that water service
to the house was in Ewa’s name.  He also learned that one of the two vehicles
frequently parked at the house was registered to the appellant at the 3010 Ohio
Avenue address, and the other was registered to Ewa at the same address.  

            The
search warrant was executed shortly after noon on June 26 by narcotics units
from the Galveston Police Department and the Texas Department of Public Safety,
as well as officers from the Dickinson Police Department.  When the team arrived
at 3010 Ohio Avenue, the appellant was at the front entrance of the house. 
Inside were the appellant’s brothers, Eugene Willie Sereal and Alvin Sereal,
and a third man, Tyrone Hazley.  Another man, Mark Norris, was on the back
patio.  Three children were also in the house. 

            Inside
the house, officers found 138.6 grams of cocaine and 9.1 grams of crack cocaine
in the back bedroom, along with a microwave, a digital scale, a box of sandwich
bags, a box of latex gloves, and money.  Also found in the back bedroom were personal
documents and mail addressed to the appellant, men’s clothing, brass knuckles,
and a baby carriage.  Another 57.3 grams of crack cocaine and a digital scale
were found in a drawer in the kitchen.  On top of a kitchen cabinet was a plate
containing 2 grams of powder cocaine, along with a razor blade.  Under the
kitchen sink were three Pyrex measuring cups containing a white substance that
tested positive for cocaine.  

            The
appellant and Eugene Willie Sereal were arrested at the house.  Ewa was not
there at the time but was arrested later.  She pleaded guilty to possession of
a controlled substance and received probation.




II

A

            In
a legal-sufficiency review, we examine all of the evidence in the light most
favorable to the verdict to determine whether a rational trier of fact could
have found the essential elements of the offense beyond a reasonable doubt.  Jackson
v. Virginia, 433 U.S. 307, 319 (1979).  This standard of review applies to
cases involving both direct and circumstantial evidence.  Clayton v. State,
235 S.W.3d 772, 778 (Tex. Crim. App. 2007).  Although we consider everything
presented at trial, we do not re-evaluate the weight and credibility of the
evidence and substitute our judgment for that of the fact finder.  Williams
v. State, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).  The jury is the exclusive
judge of the credibility of witnesses and of the weight to be given their
testimony, and it is the exclusive province of the jury to reconcile conflicts
in the evidence.  Mosley v. State, 983 S.W.2d 249, 254 (Tex. Crim. App.
1998).    

            A
person commits an offense if he knowingly possesses, with intent to deliver, a
controlled substance.  See Tex. Health & Safety Code § 481.112(a). 
Cocaine is a controlled substance.  See id. § 481.102(3)(D). 
“Possession” means “actual care, custody, control or management.”  Evans v.
State, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006); see also Tex.
Health & Safety Code § 481.002; Tex. Penal Code § 1.07(39).  To prove
unlawful possession of a controlled substance, the State must establish that
the accused (1) exercised care, control, or management over the contraband, and
(2) knew the substance was contraband.  Poindexter v. State, 153 S.W.3d
402, 405 (Tex. Crim. App. 2005).  A person’s possession of the controlled
substance must be more than fortuitous, and his mere presence at the scene
where the substance was found is insufficient to demonstrate care, management,
or control of the drug.  Evans, 202 S.W.3d at 161–62.  But presence
combined with direct or circumstantial evidence affirmatively linking the
defendant to the controlled substance may be sufficient to establish the
element of possession beyond a reasonable doubt.  Id. at 162; see
Olivarez v. State, 171 S.W.3d 283, 291–92 (Tex. App.—Houston [14th Dist.]
2005, no pet.).

            Courts
have identified a non-exhaustive list of factors that may help show an accused
is linked to a controlled substance, including (1)
the defendant’s presence when a search is conducted; (2) whether the contraband
was in plain view; (3) the defendant’s proximity to and the accessibility of
the narcotic; (4) whether the defendant was under the influence of narcotics
when arrested; (5) whether the defendant possessed other contraband or
narcotics when arrested; (6) whether the defendant made incriminating
statements when arrested; (7) whether the defendant attempted to flee; (8)
whether the defendant made furtive gestures; (9) whether there was an odor of
contraband; (10) whether other contraband or drug paraphernalia were present;
(11) whether the defendant owned or had the right to possess the place where
the drugs were found; (12) whether the place where the drugs were found was
enclosed; (13) whether the defendant was found with a large amount of cash; and
(14) whether the conduct of the defendant indicated a consciousness of guilt.  See,
e.g., Evans, 202 S.W.3d at 162
n.12; Olivarez, 171 S.W.3d at 291.  It is not the number of links that
is dispositive, but rather the logical force of all of the evidence, direct and
circumstantial.  Evans, 202 S.W.3d at 162.  

B

            In
one issue, the appellant contends the evidence is legally insufficient to link
him to the cocaine that is the basis for the offense.  Specifically, the
appellant argues that (1) he had just arrived at Ewa’s house when the officers
executed the warrant and was not in close proximity to the contraband found
inside the house; (2) the house belonged to Ewa and, although he had lived
there at one time, he had moved out two months earlier; (3) he did not have
access to the contraband concealed in cabinets, drawers, and above the
refrigerator in the house because he was estranged from Ewa; and (4) the record
is unclear whether he was found with a large amount of cash.

            At
the appellant’s trial, Henson explained that he believed the appellant was living
in the house because he found personal documents and mail addressed to the
appellant at 3010 Ohio Avenue, the appellant’s vehicle registration reflected
that address, and Henson had seen the appellant at the house on numerous
occasions.  Henson admitted that he did not document the dates and times he
observed the appellant at the house, but he explained that the reason he had
seen the appellant numerous times was that his field station was near the 3010
Ohio address and he often passed by the house and saw the appellant there.  

            Henson
testified that, based on the quantity of cocaine and the totality of the
circumstances, the amount of narcotics recovered was consistent with selling
narcotics rather than personal use.  Henson also testified that sandwich bags
are commonly used to package narcotics for sale, latex gloves are used to
prevent the transfer of fingerprints onto the packaging materials, and
microwaves and Pyrex cookware are commonly used to make “cookies” of crack
cocaine by mixing powder cocaine with baking soda and heating it.  When asked
about the brass knuckles, Henson stated that it is common to find weapons and
contraband at homes where drugs are sold because such houses are common targets
for robbery.  

            Henson
also testified that the appellant was found with $668 on his person, and there
was another $100 in the bedroom chest where some of the cocaine was found.[1]  Most of
the money was in denominations consistent with narcotics sales.

            The
police were unable to retrieve any identifiable fingerprints from the Pyrex
measuring cups, the razor blade, or the bags containing drugs that were found
in the house.  However, DNA obtained from the razor blade and one of the bags
containing cocaine tested positive for the appellant’s DNA. 

            The
appellant did not testify, but the defense presented several other witnesses.  Latisha
Waller, the mother of two of the appellant’s children, testified that on June
26, 2008, the appellant came to her house at 12:15 p.m. to pick up their son.  She
stated that they talked for about ten minutes, and then the appellant and her
son left to make the short drive to Ewa’s house.  Latisha further testified
that the appellant and Ewa were separated and he did not live with Ewa
anymore.  But Latisha did not know when the appellant and Ewa separated, and
she did not know where the appellant was living.  Latisha also did not know
whether the appellant had a job, although she acknowledged that he gave her
money to provide for their children’s needs.

            The
appellant’s wife, Ewa, testified that she and the appellant were married on
November 22, 2005, and they had two children who were ages one and six at the
time of trial.  Ewa also testified that she purchased her house before she was
married and she paid all of the bills.  She stated that on June 26, 2008, she
and the appellant were not living together, and had been separated for about
two months.  Ewa did not know where the appellant was living while they were
separated.  She testified that during that time she was having an affair with another
man named David Jones.[2] 
She and Jones, who supplied the drugs, were selling them at the house.

            Ewa
testified that Jones did not live with her during the two-month period she was
separated from the appellant, but he did spend the night occasionally.  And
although Ewa acknowledged that the appellant had left some of his clothes at
the house, Jones left no belongings there except for the drugs and the brass
knuckles.  Ewa broke up with Jones around the time she went to jail.  Ewa
professed to have no idea where Jones was living, and she did not know his
phone number, his middle name, or any of his family members.  After Ewa turned
herself in, the appellant moved back in with her.  

            Ewa
testified that the appellant had nothing to do with the drugs found throughout
her house, and he did not know that the drugs were in the house.  Ewa also testified
that she executed an affidavit stating that the drugs and paraphernalia found
in her home belonged to her alone, and she took full responsibility for them. 
She also averred that, to her knowledge, the appellant was just arriving at her
house and was about to enter when he was arrested on the front porch.  However,
Ewa did not mention David Jones or his involvement in selling drugs with her in
the affidavit.  

            Ewa
denied that she sold cocaine from the house while the appellant was living
there.  She testified that she and Jones sold cocaine in the house only during
the two-month period preceding the execution of the search warrant, and it was
only during this two-month period that the appellant was not living in the
house.  When questioned by the defense, however, Ewa stated that the appellant
did not move back in with her for about seven months because he was in jail and
had to be released on bond.  

            On
cross-examination, Ewa admitted that she had already been charged and
convicted, so she risked nothing by testifying for the appellant.  She also
stated that she knew of no reason the appellant’s DNA would be found on the
evidence.  

            The
defense also called Eugene Sereal, the appellant’s brother, to testify.  Eugene
admitted that he had previously been convicted of drug offenses and aggravated
assault, and had twice served time in the penitentiary for selling cocaine.  Eugene
testified that he was at the house when the search warrant was executed, and he
believed that the appellant had not yet arrived when the police got there.  He
also testified that he doubted whether the appellant was involved in the
activities at Ewa’s house because the appellant had moved out and was no longer
living with Ewa.  But Eugene did not know when the appellant moved out of the
house or where he lived after he moved out.  And, although Eugene spent time at
the house almost every day, he testified that he had never heard of anyone
named David Jones.  

            In
rebuttal, the State called Jose Balavantin, a deputy at the Galveston County
Sheriff’s Office, who testified as the custodian of records made of inmates
when they are booked after arrest.  He testified that the appellant was booked
on June 27, 2008, on the charge of manufacturing and delivery of a controlled
substance.  He further testified that under the section of their form entitled
“family history” the appellant indicated that he rented and owned a home with
his wife Ewa at 3010 Ohio Avenue in Dickinson.  He further indicated that this
was the only place he had lived for the past seven years.

            The
appellant’s primary arguments—that he was not in close proximity to the
contraband, he was not living in the house, and he had no access to the
concealed contraband—depend entirely on the testimony of defense witnesses. 
According to these witnesses, the appellant was merely dropping off his child
at the house on 3010 Ohio Avenue when he happened to arrive there only moments
before the police came to execute the search warrant, he had moved out of the house
two months earlier and was separated from his wife, Ewa, because she was having
an affair with another man named David Jones, and the drug enterprise was
operated entirely by Ewa and Jones without the appellant’s knowledge.  

            The
jury, as the sole fact finder, was entitled to assess the credibility of these
witnesses and their version of events.  They rationally could have found that
the witnesses’ testimony was not credible, particularly Ewa’s testimony that
she had the purported affair with David Jones only during the two-month period
when she and the appellant were separated, the entire drug enterprise was
conceived and operated out of the house for only two months, the appellant knew
nothing about the drugs, and the appellant resumed living with her shortly
thereafter.  In determining whether Ewa’s testimony was credible, the jury also
had before it Ewa’s lack of knowledge of any personal details about Jones
despite having supposedly having an affair with him, all of the witnesses’ lack
of knowledge about the appellant’s living arrangements during the purported
separation, and Eugene’s failure to even recognize the name “David Jones” even
though he was at the house almost every day, including the day the search
warrant was executed.  

            The
jury also had other evidence contradicting the appellant’s version of events. Henson
testified that officers found personal documents indicating the appellant was
living at the house, including a receipt belonging to the appellant dated May
5, 2008, a speeding ticket issued June 3, 2008, to the appellant, and a letter
and envelope addressed to “June and Ewa” postmarked June 23, 2008.  Henson also
testified that the appellant’s car, which was registered him at the 3010 Ohio
Avenue address, was “always” or “primarily” parked there, and he often saw the
appellant there.  The appellant questions Henson’s credibility and the
thoroughness of his police work, but Henson was cross-examined on these issues
and the jury was entitled to weigh his credibility and the strength of his
testimony.  

            Additionally,
DNA evidence linked the appellant to the contraband.  The appellant argues that
his DNA could have been transferred to the contraband merely by touching a
surface containing his skin cells, but there is no evidence to suggest this
occurred.  Further, Ewa testified the appellant was not involved in the drug
enterprise and she knew of no reason the appellant’s DNA would be on the razor
and bag containing cocaine.  Based on the evidence, the jury could have
rationally concluded that DNA was found on the evidence because the appellant
was not separated from Ewa but was living at the house and was involved in the
drug enterprise.  

            The
appellant cites two cases in which the court of appeals concluded the evidence
was legally insufficient to support a defendant’s conviction for possession of
controlled substances, and he argues the circumstances in the present case are
similar.  See Allen v. State, 249 S.W.3d 680 (Tex. App.—Austin 2008, no
pet); Mares v. State, 801 S.W.2d 121 (Tex. App.—San Antonio 1990, no
pet.).  These cases are both distinguishable, however, because in Allen
and Mares, there was no evidence that the defendants ever lived or
stayed at the apartments where the controlled substances were found, nor were
the defendants shown to be closely related to the other persons in joint
possession of the contraband or who owned or leased the premises where the
contraband was found.  Allen, 249 S.W.3d at 684–85; Mares, 801
S.W.2d at 126–27.

            Reviewing all of the evidence in
the light most favorable to the verdict, the combined and cumulative force of
the direct and circumstantial evidence affirmatively links the appellant to the
cocaine that is the basis for the offense, and therefore the evidence is
legally sufficient to support the jury’s verdict.

*
* *

            We
overrule the appellant’s issue and affirm the trial court’s judgment.

 

                                                                                    

                                                                        /s/        Jeffrey
V. Brown

                                                                                    Justice

 

 

 

Panel consists of Justices Brown, Boyce,
and Jamison.

Do
Not Publish — Tex. R. App. P. 47.2(b).









[1]
There appeared to be some confusion on Henson’s part when the prosecutor asked
him to state the denominations of the money found on the appellant’s person, as
Henson first answered, “Well, total, see, on his person, it was a 100-dollar
bill.”  This testimony appears inconsistent with Henson’s earlier statement
that the appellant was found with “$668 on his person.”  Henson then stated
that he could not answer the question concerning denominations, but could
provide the denominations of the total amount of money found on the appellant’s
person and in the house, which was $768.  The jury was entitled to resolve any
conflict in this testimony and consider it along with the rest of the evidence
presented.





[2]
Ewa admitted that her youngest child was about two weeks old when the house was
searched, which meant that she had had the alleged affair with Jones while she
was pregnant with the appellant’s child.