

# IN THE
# TENTH COURT OF APPEALS

## No. 10-08-00170-CR

**EDDIE FOSTER,**

                                     **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                     **Appellee**

---

### From the 54th District Court
### McLennan County, Texas
### Trial Court No. 2007-1609-C2

---

## MEMORANDUM OPINION

---

A jury found Appellant Eddie Foster guilty of the state-jail felony offense of possession of a controlled substance, to wit: cocaine, and assessed his punishment at two years' confinement. By two issues, Foster contends that the evidence of the element of possession is legally and factually insufficient to support his conviction. We will affirm.

When reviewing a challenge to the legal sufficiency of the evidence to establish the elements of a penal offense, we must determine whether, after viewing all the

evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Our duty is to determine if the finding of the trier of fact is rational by viewing all of the evidence admitted at trial in the light most favorable to the verdict. *Adelman v. State,* 828 S.W.2d 418, 422 (Tex. Crim. App. 1992). In doing so, any inconsistencies in the evidence are resolved in favor of the verdict. *Curry v. State,* 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

> In a factual-sufficiency review, the evidence is reviewed in a neutral light. *Roberts v. State*, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007); *accord Johnson v. State*, 23 S.W.3d [1, 7 (Tex. Crim. App. 2000)]. Only one question is to be answered in a factual-sufficiency review: Considering all of the evidence in a neutral light, was a jury rationally justified in finding guilt beyond a reasonable doubt? *Watson* [*v. State*], 204 S.W.3d [404, 415 (Tex. Crim. App. 2006)]. Evidence can be factually insufficient in one of two ways: (1) when the evidence supporting the verdict is so weak that the verdict seems clearly wrong and manifestly unjust; and (2) when the supporting evidence is outweighed by the great weight and preponderance of the contrary evidence so as to render the verdict clearly wrong and manifestly unjust. *Roberts*, 220 S.W.3d at 524 (citing *Watson*, 204 S.W.3d at 414-15; *Johnson*, 23 S.W.3d at 11); *see also Castillo v. State*, 221 S.W.3d 689, 693 (Tex. Crim. App. 2007). "[A]n appellate court must first be able to say, with some objective basis in the record, that the great weight and preponderance of the . . . evidence contradicts the jury's verdict before it is justified in exercising its appellate fact jurisdiction to order a new trial." *Watson*, 204 S.W.3d at 417. A reversal for factual insufficiency cannot occur when "the greater weight and preponderance of the evidence actually favors conviction." *Roberts*, 220 S.W.3d at 524. Although an appellate court has the ability to second-guess the jury to a limited degree, the factual-sufficiency review should still be deferential, with a high level of skepticism about the jury's verdict required before a reversal can occur. *Watson*, 204 S.W.3d at 417; *Cain* [*v. State*], 958 S.W.2d [404, 410 (Tex. Crim. App. 1997)].

*Grotti v. State*, 273 S.W.3d 273, 283 (Tex. Crim. App. 2008).

The State was required to prove beyond a reasonable doubt that the accused intentionally or knowingly possessed cocaine in an amount less than one gram. *See* TEX. HEALTH & SAFETY CODE ANN. § 415.115(a), (b) (Vernon 2003). To do so, the State had to establish: (1) the accused exercised control, management, or care over the substance, and (2) the accused knew the matter possessed was contraband. *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005). Whether the evidence is direct or circumstantial, "it must establish, to the requisite level of confidence, that the accused's connection with the drug was more than just fortuitous. . . ." *Id.* at 405-06 (quoting *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995)). Previously, this was referred to as the "affirmative links" rule. *See id.* at 406. However, the Court of Criminal Appeals has cautioned against use of the term "affirmative links" as suggesting "an independent test of legal sufficiency" and has chosen instead to use only the term "'link' so that it is clear that evidence of drug possession is judged by the same standard as all other evidence." *Evans v. State*, 202 S.W.3d 158, 162 n.9 (Tex. Crim. App. 2006).

The rule is designed to protect the innocent bystander from conviction based solely upon his fortuitous proximity to someone else's drugs. *Poindexter*, 153 S.W.3d at 406. The rule simply restates the commonsense notion that a person, such as a father, son, spouse, roommate, or friend, may jointly possess property like a house but not necessarily jointly possess the contraband found in that house. *Id.* Thus, "[w]hen the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of and control over the

contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband." *Id.* (quoting *Deshong v. State*, 625 S.W.2d 327, 329 (Tex. Crim. App. 1981)).

Some circumstances that may link a defendant to the controlled substance are: (1) the defendant's presence when the search was executed; (2) the contraband was in plain view; (3) the proximity to and accessibility of the contraband; (4) the defendant was under the influence of contraband; (5) the defendant's possession of other contraband when arrested; (6) incriminating statements by the defendant when arrested; (7) attempted flight by the defendant; (8) furtive gestures by the defendant; (9) there was an odor of the contraband; (10) the presence of other contraband or drug paraphernalia not included in the charge; (11) the defendant's ownership or right of possession of the place where the controlled substance was found; (12) the drugs were found in an enclosed place; (13) there was a significant amount of drugs; and (14) the defendant possessed weapons or large amounts of cash. *Stubblefield v. State*, 79 S.W.3d 171, 174 (Tex. App.—Texarkana 2002, pet. ref'd); *see also Olivarez v. State*, 171 S.W.3d 283, 291 (Tex. App.—Houston [14th Dist.] 2005, no pet.); *Lassaint v. State*, 79 S.W.3d 736, 740-41 (Tex. App.—Corpus Christi 2002, no pet.); *De La Garza v. State*, 898 S.W.2d 376, 379 (Tex. App.—San Antonio 1995, no pet.). The number of links present is not as important as the degree to which they tend to link the defendant to the controlled substance. *Stubblefield*, 79 S.W.3d at 174; *Williams v. State*, 906 S.W.2d 58, 65 (Tex. App.—Tyler 1995, pet. ref'd).

In this case, Investigator Calvin McLean of the Waco Police Department Drug Enforcement Section testified that, for more than thirty days before obtaining a search warrant, he was investigating "the possession and distribution of a controlled substance, namely cocaine," by Foster and his girlfriend, Shameka Joiner, at the residence at 807 North 10th Street in Waco, Texas. The following evidence supports that Foster was either living or staying at the residence:

- McLean stated that, during his surveillance of the residence, he saw Foster and Joiner entering and leaving the residence on several occasions. While others who visited the home would knock and wait to be invited inside, neither Joiner nor Foster would knock before entering. Allen Thompson, also an investigator in the Waco Police Department Drug Enforcement Section, testified that when Foster arrived at the residence, at times it looked like he was using a key to enter. When the search was finally executed on July 18, 2007, Investigator Donald Repp determined that the key that he was told was removed from Foster's personal belongings did turn the cylinder on the front door lock of the residence.

- Thompson testified that in May 2007 he saw Foster coming and going from the residence driving a white Taurus. McLean and an employee of the Waco Police Department's customer representative intake office testified that on June 14, 2007, approximately one month before the search was executed, Foster filed a police report that his car, a white 1992 Ford Taurus, had been stolen from 807 North 10th Street in Waco. In the report, Foster also gave 807 North 10th Street as his residence address.

- David Starr, a narcotics investigator for the Waco Police Department, testified that during the search, he located paperwork inside the residence that "came back to" Foster. Starr found a personal résumé for employment for Foster that had 807 North 10th Street listed as his address. Starr also located important private mail addressed to Foster.

- Investigator Rickey Revis of the Waco Police Department Drug Enforcement Section testified that he took several photographs of men's clothing in the living room of the residence. Revis also testified that he took a photograph of men's shoes that were located in the bedroom of the home, and the shoes matched closely in size to those worn by Foster when the search was executed.

On the other hand, there is some evidence that Foster was not living or staying at the residence. During the search, investigators discovered a lease agreement for the residence, and only Joiner's name was listed. Joiner later testified that she signed a lease on the residence at 807 North 10th Street and was paying rent. Joiner testified that two people lived with her at the home, her cousins Antoine and Danny Joiner, and that the men's clothing belonged to them. Joiner and Foster's sister testified that Foster was helping take care of his mother at the time and would go to his mother's house every day, sometimes spending the night. Foster's sister also stated that he used several different addresses on his résumés, and Joiner testified that Foster also used his mother's and sister's addresses as his address.

But Joiner did acknowledge that Foster was at the residence at 807 North 10th Street about five days per week, visiting her because she was pregnant with his child and "sickly." She gave him a key to lock the door to the house, and he did leave important personal papers there.

McLean and Thompson testified that, during their surveillance of the residence, they noticed a large amount of both vehicular and pedestrian traffic coming and going from the residence. Thompson testified that he saw both Foster and Joiner opening the door and letting visitors inside the residence. The visitors would stay for only short periods of time, *i.e.*, several minutes, before leaving. Both McLean and Thompson testified that this activity is consistent with drug activity.

Thompson testified that, while he was surveilling the residence on the day the search warrant was executed, he saw Foster enter the house at least two separate times.

The evidence also establishes that Foster was present when the search was executed. Investigators testified that Foster was on the front porch of the residence when they arrived to execute the search warrant. Furthermore, Starr testified that when they cleared the residence, no one was inside at that time. There is no evidence that Foster was under the influence of a controlled substance, attempted to flee, or made incriminating statements or furtive gestures. No contraband, currency, or weapons were found on Foster's person.

Revis testified that a plastic baggie containing what appeared to be crack cocaine was found on a bookshelf in the living room of the residence at 807 North 10th Street. Revis stated that the shelf itself was glass and that the baggie was "to the side [of a photograph] in the back corner" of the shelf. The substance in the baggie field-tested positive for the presence of cocaine. A forensic scientist for the Texas Department of Public Safety in Waco later confirmed that the baggie contained 0.97 grams of cocaine. Revis testified that the cocaine was in plain view and open and obvious in the residence.

There is also some evidence that other contraband was present at the location when the search was executed. Revis testified that during the search, he photographed a razor blade that appeared to have some type of cocaine residue on it. He also found a small white rock that appeared to be crack cocaine on the dining room table. Both field-tested positive for the presence of cocaine.[1] Furthermore, several investigators testified

---

[1] Foster asks this Court to take judicial notice on appeal of the following:

that when they arrived to execute the warrant, a man named Ronnie Reyes was on the front porch with Foster and Joiner. Starr testified that they were ordered "to the ground." While Reyes lay on the front porch, Starr noticed that Reyes had a plastic baggie containing "something white" and some cash in his pocket. Starr suspected that the white substance was cocaine. Starr searched Reyes's pockets and found a total of three baggies of the white substance along with the cash. The forensic scientist later confirmed that the baggies contained 1.27 grams of cocaine. Additionally, Michelle Starr, a detective in the Waco Police Department Family Violence Unit, testified that she was called to the scene to search Joiner and Carolyn Waits, another woman at the residence at the time of the search. Michelle Starr found a pill bottle containing some pills in one of Waits's front pockets. David Starr testified that the prescription label on the bottle identified the patient as "Mildred Moore," not Waits. He also stated that the

---

the Sirchie Finger Print Laboratories, Inc. catalog, which states regarding the NARK II Presumptive Drug Test Kit: "Presumptive identification is generally recognized within our legal system as a component of *probable cause. There is no drug identification system presently in use which completely eliminates the occurrence of false positives and false negatives. A forensic laboratory is required to qualitatively identify an unknown substance.*" (emphasis added).

Judicial notice on appeal should be taken, if at all, where necessary to avoid an unjust judgment. *Watkins v. State*, 245 S.W.3d 444, 456 (Tex. Crim. App. 2008). A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. TEX. R. EVID. 201(b). Foster has not adequately established the indisputability of the Sirchie Finger Print Laboratories, Inc. catalog; thus, he has not demonstrated that judicial notice on appeal is necessary to avoid an unjust judgment. *See Watkins*, 245 S.W.3d at 456. Furthermore, even if we were to take judicial notice of the catalog, we would not be prevented from considering the fact that the substance on the razor blade and the small white rock found on the dining room table field-tested positive for the presence of cocaine. Foster made no objection to the admission of that testimony at trial; therefore, any complaints about the reliability of the field tests were not preserved for review. *See* TEX. R. APP. P. 33.1(a).

bottle contained nine pills and that the prescription label identified the pills as the painkiller Hydrocodone, a drug that is popular on the streets for abuse.

Joiner pleaded guilty to possessing the controlled substance in this case and received probation. She also testified that Foster knew nothing about any of the controlled substances that were found during the search. However, she stated that she did not recognize the razor blade found in the residence. She testified that she uses razor blades to chop up rocks of cocaine, but she throws them away every time. She also stated that she did not recognize the crumbs on the dining room table that field-tested positive for the presence of cocaine. When asked if she knew Reyes, she replied, "I've seen him around." She stated that although he is a drug user, he was not there to buy drugs or give her additional inventory; he was just there "hanging out." She testified that Waits is also a drug user but that she does not know her.

Foster argues that the foregoing evidence shows that he stayed at the residence on and off for a time and that he had access to the room in which the contraband was found, but he contends that the evidence is not enough to allow a jury to reasonably find that he possessed the contraband. However, we conclude that the evidence links Foster to the cocaine. *See Evans*, 202 S.W.3d at 166 (noting that it is the logical force of the combined pieces of circumstantial evidence, not the number of links, that supports a jury's verdict). A jury was not required to believe the contrary direct evidence from Joiner that Foster knew nothing about any of the controlled substances that were found during the search. *See id.*

The cases on which Foster relies—*Mares v. State*, 801 S.W.2d 121 (Tex. App.—San Antonio 1990, no pet.), *Allen v. State*, 249 S.W.3d 680 (Tex. App.—Austin 2008, no pet.), and *Martin v. State*, 753 S.W.2d 384 (Tex. Crim. App. 1988)—are distinguishable. In *Mares* and *Allen*, there was no evidence that the defendants ever lived or stayed at the apartments where the controlled substances were found, nor were the defendants shown to be closely related to the other persons in joint possession of the contraband or who owned or leased the premises where the contraband was found. *Allen*, 249 S.W.3d at 684-85; *Mares*, 801 S.W.2d at 126-27. In *Martin*, the defendant was not present when the search was executed, and the methamphetamine was found in the purse belonging to defendant's wife and in a black bag found in the front seat of defendant's car at least one and a half hours after defendant and his wife parked their car, during which time the car was unlocked and the driver's window was rolled down. *Martin*, 753 S.W.2d at 386-87.

Viewing all the evidence in the light most favorable to the verdict, the jury could reasonably conclude, beyond a reasonable doubt, that Foster committed the offense of possession of a controlled substance. *See Curry*, 30 S.W.3d at 406. Also, the proof of guilt is not so weak nor the conflicting evidence so strong as to render the verdict clearly wrong and manifestly unjust. *See Grotti*, 273 S.W.3d at 283. We overrule both of Foster's issues and affirm the trial court's judgment.


REX D. DAVIS
Justice

Before Chief Justice Gray,
        Justice Reyna, and
        Justice Davis
Affirmed
Opinion delivered and filed March 10, 2010
Do not publish
[CR25]